**LA COMPANIA OCHO, INC.,
et al., Plaintiffs,**

**v.**

**UNITED STATES FOREST SERVICE,
et al., Defendants.**

**Civ. No. 94–0317 JB.**

United States District Court,
D. New Mexico.

Jan. 23, 1995.

Richard Rosenstock, Santa Fe, NM, for La Compania Ocho, Inc., Patricio Valdez, Manuel Gurule, Antonio DeVargas, Steve Chavez, and Dennis Valdez.

Lisa Enfield, Albuquerque, NM, Dave Richards, Santa Fe, NM, for plaintiffs.

Clark deSchweinitz, Northern New Mexico Legal Services, Inc., Santa Fe, NM, for Madera Forest Products Ass'n.

John Zavitz, Asst. U.S. Atty., Albuquerque, NM, David Gelhert and Nadira Clark, Environmental and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, Mary Ann Joca, Office of Gen. Counsel, U.S. Dept. of Agriculture, Albuquerque, NM, Kathryn Toffeneitt and Jay McWhirther, Office of Gen. Counsel, U.S. Dept. of Agriculture, Washington, DC, for defendants.

Philip B. Davis, American Civ. Liberties Union of New Mexico, Albuquerque, NM, for amicus curiae.

## *MEMORANDUM OPINION AND ORDER*

BURCIAGA, Senior District Judge.

THIS MATTER comes before the Court on Defendants' July 5, 1994 motion to dismiss in part and Plaintiffs' October 18, 1994 motion to amend complaint. The Court, having heard the arguments of counsel, reviewed the submissions of the parties and the relevant law, and being otherwise fully advised in the premises, finds Defendants' motion to dismiss is well taken in part and is granted in part. Plaintiffs' motion to amend is well taken and is granted.

The individual Plaintiffs are residents of communities located near the Vallecitos Federal Sustained Yield Unit ("Vallecitos Unit"), an area consisting of approximately 73,400 acres of timberland in the El Rito Ranger District of the Carson National Forest in northern New Mexico. Plaintiff La Compania Ocho, Inc. ("La Compania") is engaged in the business of harvesting timber for the manufacture of various wood products. Plaintiff Madera Forest Products Association ("MFPA") is a non-profit wood products business association. Plaintiffs bring suit against the United States Forest Service of the United States Department of Agriculture and against various individual agents or employees of the Department of Agriculture and the Forest Service in both their official and individual capacities.

The Secretary of Agriculture established the Vallecitos Unit in 1948 pursuant to the Sustained Yield Forest Management Act of 1944 ("SYFMA"), codified at 16 U.S.C. §§ 583–583i (1988). Congress enacted the SYFMA to promote the economic stability of communities dependent upon the harvesting and sale of timber from federally owned or administered land. *Id.* § 583. The Act gives the Secretary of Agriculture the discretionary authority to establish sustained-yield units for the benefit of forest-dependent communities. *Id.* §§ 583–583b. The Secretary must sell timber from sustained-yield units to responsible operators within benefitted communities and without competitive bidding (subject to conditions the Secretary deems necessary). *Id.* § 583b. Since 1988, the MFPA has been a responsible operator for timber yield from the Vallecitos Unit; La Compania has been a responsible operator since 1992. In 1986, the Forest Service issued a ten-year Carson National Forest Plan ("Carson plan"). The plan incorporated SYFMA objectives relating to the Vallecitos Unit.

Plaintiffs allege that Defendants violated and are presently in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706; the SYFMA; the National Forest Management Act, 16 U.S.C. §§ 1600–1687; and corresponding regulations. They additionally assert that Defendants violated 42 U.S.C. § 1981 and their First and Fifth Amendment rights. In addition to injunctive and declaratory relief, Plaintiffs seek compensatory and punitive damages against the officials personally. Plaintiffs' claims may be categorized as (1) claims relating to the alleged mismanagement of the Vallecitos Unit, and (2) claims involving alleged retaliatory criminal investigations and an accusation of criminal wrongdoing. The facts supporting these claims will be discussed in detail *infra.*

Defendants have moved to dismiss Plaintiffs' damages claims against the individual Defendants in their personal capacities. Defendants argue that the APA precludes such *Bivens* claims. The American Civil Liberties Union of New Mexico, as amicus curiae, urges the Court to reject Defendants' assertions in this regard. Defendants also contend that Plaintiffs' section 1981 claim must fail because the statute supposedly does not apply to discriminatory actions of the federal government. Finally, Plaintiffs seek leave to amend their complaint in order to allege post-litigation retaliation. Defendants oppose amendment because they assert that the new allegations are factually insupportable and thus amendment would be futile.

■ As an initial matter, the Court will grant Plaintiffs leave to amend their complaint to allege post-filing retaliatory conduct. The amended complaint relates to facts that occurred after the filing of Plaintiffs' complaint and after the joinder of Defendant James on May 17, 1994. Defendants oppose amendment not on grounds that permitting amendment would be futile due to legal insufficiency, but because the amended complaint is factually infirm. At this stage, Plaintiffs' allegations must be accepted as true. Defendants' assertions, backed by affidavits, are more appropriate for summary adjudication. *See* 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1487 at 637 (1990) (leave to amend may be denied if proposed amendment is "legally insufficient on its face."); *Pearl Brewing Co. v. Joseph Schlitz Brewing Co.,* 415 F.Supp. 1122, 1125 (S.D.Tex.1976) (factually-based arguments against amendment "typically cannot be resolved on the pleadings and, in any event, are

improperly inquired into at this stage, especially in view of the liberal rules regarding amendment of complaints."). Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Defendants provide no indication that the proposed amendment is in bad faith or would cause undue prejudice or delay. Permission to amend is accordingly granted—consistent, of course, with the Court's disposition of the motion to dismiss relating to Plaintiffs' *Bivens* claims, as discussed below.

■ For the purposes of a motion to dismiss, the material allegations of the complaint must be accepted as true. *Franklin v. Meredith*, 386 F.2d 958, 959 (10th Cir.1967). Dismissal is appropriate only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claims which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court must construe the pleadings liberally and if any possibility of relief exists, the claims should not be dismissed. *Gas-a-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir.1973).

### I. WHETHER PLAINTIFFS' *BIVENS* CLAIMS ARE PRECLUDED BY THE ADMINISTRATIVE PROCEDURE ACT

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court authorized a federal cause of action for monetary damages against individual federal officers alleged to have violated the Fourth Amendment. *Id.* at 389, 91 S.Ct. at 2001. Subsequent decisions have extended the availability of *Bivens* actions to alleged violations of other constitutional rights. *See Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (equal protection component of the Fifth Amendment); *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (cruel and unusual punishment clause of the Eighth Amendment); *National Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521 (10th Cir.1994) (free association and expression guarantees of the First Amendment).

Theoretically, the availability of a *Bivens* remedy has always depended to some extent on the non-availability of alternative congressional remedies. The Supreme Court's recognition of an implied constitutional right of action in *Bivens* was influenced by the absence of an "explicit congressional declaration that persons [so] injured ... may not recover money damages ..., but must instead be remitted to another remedy, equally effective in the view of Congress," 403 U.S. at 397, 91 S.Ct. at 2005, and by the absence of any "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 396, 91 S.Ct. at 2005.

Earlier cases demonstrate that congressional preemption of *Bivens* claims had to be demonstrated by clear evidence to that effect, and that the adequacy of a given remedy would be considered in construing congressional intent. In *Davis*, the Court permitted an alleged victim of gender discrimination by a former congressman to bring a *Bivens* cause of action under the equal protection clause, despite the fact that Congress expressly exempted itself from Title VII coverage. 442 U.S. at 247, 99 S.Ct. at 2278. It permitted a *Bivens* claim because Congress did not explicitly deny *Bivens* relief, *id.*, and because victims of constitutional violations such as plaintiff "have no effective means other than the judiciary to enforce these rights, [and] must be able to invoke the existing jurisdiction of the courts...." 442 U.S. at 242, 99 S.Ct. at 2275. Later, in *Carlson*, the Court reasoned that legislation may defeat a *Bivens* claim only if Congress provided "an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." 446 U.S. at 18–19, 100 S.Ct. at 1471. In so holding, the Court rejected the assertion that the Federal Tort Claims Act preempted an implied damages remedy. *Id.* Additionally, the Court believed that a *Bivens* remedy is more effective at securing compliance with constitutional mandates than remedies the FTCA provides. *Id.* at 21–22, 100 S.Ct. at 1472–73.

In more recent decisions, however, the Court has proven rather penurious in its recognition of *Bivens* remedies, particularly

in cases where Congress has arguably considered and provided for alternative remedial schemes or has failed to provide compensatory remedies and indications exist that the omission was intentional. "Our more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts. The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages...." *Schweiker v. Chilicky,* 487 U.S. 412, 421–22, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988) (citation omitted). For example, in *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Court unanimously refused to create a new species of constitutional tort litigation for enlisted personnel allegedly injured by the unconstitutional actions of superior officers, despite the fact that such plaintiffs have no other remedy against the government. "[T]he unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Id.* at 304, 103 S.Ct. at 2367.

Where Congress has provided a remedy, the Court has refrained from considering the remedy's relative inadequacy. In *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Court addressed the issue of whether federal employees whose First Amendment rights are allegedly violated by their superiors may bring a *Bivens* action as a supplement to civil service review. Despite conceding that Congress had not expressly rejected the remedy the plaintiff sought, *id.* at 378, 103 S.Ct. at 2411–12, and despite assuming that "civil service remedies were not as effective as an individual damages remedy and did not fully compensate ... for the harm [plaintiff] suffered," *id.* at 372, 103 S.Ct. at 2408. The Court nevertheless denied *Bivens* relief by unanimous decision. The Court was impressed by the extant civil service system, which it described as an "elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures ... by which improper action may be redressed." *Id.* at 385, 103 S.Ct. at 2415. Given this regulatory scheme, the Court phrased the issue as "whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue." *Id.* at 388, 103 S.Ct. at 2417. Stating that this question "cannot be answered simply by noting that existing remedies do not provide complete relief ...," *id.,* the Court declined to permit a *Bivens* claim because "Congress is in a better position to decide whether or not the public interest would be served by creating it." *Id.* at 390, 103 S.Ct. at 2417.

*Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), again reveals the Court's refusal to second-guess congressional remedies. The Court held that a *Bivens* remedy is not available for due process violations that resulted from wrongful termination of social security disability benefits. 487 U.S. at 429, 108 S.Ct. at 2470–71. The Court so held despite congressional failure to provide compensatory relief to known victims of a Social Security Administration run amok. *Id.* at 423–29, 108 S.Ct. at 2467–71. The termination of plaintiffs' benefits arose during a time when the Social Security Administration wrongfully terminated nearly 200,000 deserving claimants. *Id.* at 416, 108 S.Ct. at 2464. The Court found that "special factors counselling hesitation" includes "an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Id.* at 423, 108 S.Ct. at 2468. As at least one commentator has noted, "Making no pretense of searching for congressional intent [to expressly preclude a *Bivens* remedy], the Court [in *Chilicky* ] deferred to the congressional remedial scheme merely because Congress had already created a remedy...." Betsy J. Grey, *Preemption of Bivens Claims: How Clearly Must*

*Congress Speak?*, 70 Wash.U.L.Q. 1087, 1126 (1992).

■ Plaintiffs place significant reliance on the earlier Supreme Court decisions of *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1978), and *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). This reliance is misplaced because those decisions no longer represent the current state of the law in this area. *Bush* and *Chilicky* demonstrate that the Court has significantly retreated from *Davis, Carlson* and earlier lower court decisions which seemingly advocated expansive recognition of *Bivens* claims. "The courts, including our court, are reading *Chilicky* broadly—that is, as cutting back significantly on the availability of *Bivens* actions." *Brothers v. Custis*, 886 F.2d 1282, 1284 (10th Cir.1989). Courts faced with novel *Bivens* claims must now defer to congressional efforts in the applicable field, and should be chary of supplementing existing legislative remedial schemes with *Bivens* remedies. "[T]he clear purpose of *Chilicky* and the related cases is to virtually prohibit intrusion by the courts into the statutory scheme established by Congress." *Lombardi v. Small Business Admin.*, 889 F.2d 959, 961–62 (10th Cir.1989).

■ Set against this precedent, Plaintiffs' *Bivens* claims predicated upon Defendants' alleged maladministration of the Vallecitos Unit are precluded by the Administrative Procedure Act, 5 U.S.C. §§ 551–706 (1988), because the APA represents Congress' remedial response to unlawful agency action. The APA provides, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. A reviewing court is authorized to "decide all relevant questions of law" and may either "compel agency action unlawfully withheld or unreasonably delayed" or "hold unlawful and set aside agency action, findings and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] in excess of statutory jurisdiction ... [or] without observance of procedure required by law...." 5 U.S.C. § 706. And significantly, the reviewing court is also authorized to set aside agency action "contrary to constitutional right, power, privilege or immunity...." *Id.* See also H.R.Rep. No. 1980, 79th Cong., 2d Sess. 275 (1946), *reprinted in* 1946 U.S.C.C.Serv. 1195, 1200, 1205 (APA's remedies redress "every legal wrong.").

Plaintiffs' claims relating to the Forest Service's administration of the Vallecitos Unit are cognizable under the APA. Essentially, Plaintiffs contend Defendants wrongfully refused to approve La Compania as a responsible operator until 1992 and wrongfully withheld approval for the individual Plaintiffs; failed to allocate timber to Plaintiffs in accordance with the Carson Plan and the SYFMA; applied competitive bidding procedures or otherwise failed to allocate timber on a non-competitive basis; allowed non-resident operators access to timber harvests in the Vallecitos Unit; refused to enforce local hiring requirements; unlawfully shut down logging activity in mid–1993; and failed to document these adverse actions or otherwise comply with the procedural dictates of the APA. All of these acts or omissions fall under the purview of the APA because all can be characterized as "agency action," broadly defined as including "the whole or a part of an agency rule, order, license, sanction, relief, *or the equivalent or the denial thereof, or failure to act....*" 5 U.S.C. § 551(13) (emphasis added).[1]

1. A "rule" is "the whole or a part of an agency statement of general *or particular* applicability and future effect designed to implement, interpret, or prescribe law or policy ... *and includes the approval or prescription for the future of ... services or allowances therefore ... or practices bearing on any of the foregoing....*" *Id.* § 551(4) (emphasis added). An "order" is defined as "the whole or a part of a final disposition, *whether affirmative, negative, injunctive or declaratory* in form...." *Id.* § 551(6) (emphasis added). A "license" "includes the whole or part of an agency permit, certificate, *approval, ... or other form of permission ....*" *Id.* § 551(8) (emphasis added). "Sanction" includes any "prohibition, requirement, limitation ... [or] withholding of relief ... [or] taking other compulsory or restrictive action...." *Id.* § 551(10)(A), (B), (G). And finally, "relief" encompasses the "grant of money, assistance, license, authority, ... privilege, or remedy ... [or] recognition of a claim, right, immunity, privilege ... [or] taking of other action on the application or petition of, and

Plaintiffs' contention that most if not all of these actions were motivated by an anti-Hispanic animus or in retaliation for the exercise of Plaintiffs' First Amendment rights does not take these claims outside the province of the APA. As discussed, a reviewing court may set aside agency action "contrary to constitutional right." 5 U.S.C. § 706. Plaintiffs and amicus seem to suggest that unconstitutional conduct that also violates statutory law must be redressable by a separate *Bivens* claim. But the Supreme Court in *Chilicky* rejected the notion that "statutory violations caused by unconstitutional conduct necessarily require remedies in addition to the remedies provided generally for such statutory violations.... [T]he presence of alleged unconstitutional conduct that is not *separately* remedied under the statutory scheme [does not] imply that the statute has provided 'no remedy' for the constitutional wrong at issue." 487 U.S. at 427–28, 108 S.Ct. at 2470 (emphasis in original).

In the end, Plaintiffs oppose APA preemption of *Bivens* claims because the APA only permits injunctive relief in the form of compelling or setting aside agency action. *Bush* and *Chilicky* instruct that the failure of alternative congressional remedies to provide complete relief is no longer of paramount concern if Congress provided what it considers adequate remedies. The issue is not whether the existing remedial system of the APA should be improved upon by authorizing recovery of *Bivens* damages. Rather, this Court owes "an appropriate judicial deference to indications that congressional inaction has not been inadvertent." *Chilicky,* 487 U.S. at 423, 108 S.Ct. at 2468.

Congress provided an indication of its intent in this regard in the 1976 amendments to the APA, which partially abolished the federal government's sovereign immunity defense. Congress waived immunity only in actions in which claimants seek injunctive or declaratory relief. As amended, the Act permits suits against agencies "in a court of the United States seeking relief *other than money damages* and stating a claim that an agen-

cy or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority...." 5 U.S.C. § 702 (emphasis added). *See* H.R.Rep. No. 1656, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6131 ("The explicit exclusion of monetary relief makes it clear that sovereign immunity is abolished only in actions for specific relief (injunction, declaratory judgment, mandatory relief, etc.).)."). That Congress refused to waive immunity for monetary damages is strong evidence of its intent to foreclose *Bivens* relief.

Even without dispositive evidence of congressional intent, the potentially grave impact of recognizing a cause of action for damages caused as a result of unlawful agency action suffices as a "special factor[ ] counselling hesitation in the absence of affirmative action by Congress." *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2005. Federal agencies regulate a vast range of business and social activity and, in doing so, must weigh costs and benefits when administering federal programs. These decisions ineluctably impose regulatory costs on those affected, and may even result in serious economic dislocation or loss. If individual officers of federal agencies were forced to compensate those so affected because discretionary agency action is later found to be unlawful, regulation would soon prove unworkable or inordinately expensive.

On the other hand, agency action must be subject to some kind of meaningful check in order to ensure its legality. The legislative history of the 1976 amendments to the APA demonstrates that Congress resolved these competing policy considerations in favor of injunctive, and against monetary, relief. Although Congress was concerned with "unnecessary judicial interference in administrative decisions," H.Rep. No. 1656, 94th Cong., 2d Sess. 9, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6130, it did not "believe that partial elimination of sovereign immunity ... will create undue interference.... Rather, it will be a safety-valve to ensure greater fairness and accountability in the administrative machinery of government," *id.* at 6129–30, but

beneficial to, a person...." *Id.* § 551(11). For example, Plaintiffs' claims regarding the allegedly wrongful shut-down of logging activity in the

Vallecitos Unit may be characterized as either an "order," the denial of a "license," or a "sanction."

"without exposing the government to new liability for money damages, and without upsetting congressional judgments that a particular remedy in a given situation should be the exclusive remedy." *Id.* at 6140. This Court will not disturb the careful balance Congress struck between affording meaningful review and redress of agency action while maintaining the efficacy of the regulatory state.

Every court to have confronted this issue has held that the APA preempts *Bivens* claims predicated upon agency action. *See Sky Ad, Inc. v. McClure,* 951 F.2d 1146, 1148–49 (9th Cir.1991) (*Bivens* remedies not available for allegedly unconstitutional agency rulemaking), *cert. denied,* — U.S. —, 113 S.Ct. 58, 121 L.Ed.2d 26 (1992); *Maxey v. Kadrovach,* 890 F.2d 73, 75 (8th Cir.1989) ("A VA probationary physician who is discharged in alleged violation of the Constitution may appeal that agency decision to a federal court under the APA to gain redress, albeit limited in nature. [Plaintiff] thus has no right to pursue constitutional tort claims...." (citations omitted)), *cert. denied,* 495 U.S. 933, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990); *Gleason v. Malcom,* 718 F.2d 1044, 1048 (11th Cir.1983) (*Bivens*-type conspiracy claim precluded by APA review); *Custodio v. United States,* 866 F.Supp. 479, 482 (D.Colo. 1994) (no *Bivens* claims cognizable because denial of government hospital privileges reviewable under the APA; "[T]he remedy provided by the APA—reversal of agency action—is [deemed] a meaningful alternative to money damages."). *See also Cousins v. Secretary of the United States Dep't of Transp.,* 880 F.2d 603, 605–06 (1st Cir.1989) (APA precludes implying private causes of action for damages under other federal statutes).

■ Claims relating to management of the Vallecitos Unit are not the only claims Plaintiffs allege, however. Plaintiffs also aver that Defendants initiated a meritless criminal investigation of La Compania in September of 1993 and in the summer of 1994 in retaliation for engaging in protected First Amendment expression. In addition, Plaintiffs claim that Defendant Andrew James sent a letter in May of 1994 to Plaintiffs and to other timber operators accusing them of collusive bidding practices and price-fixing in violation of the Sherman Act, allegedly in an effort to intimidate Plaintiffs from pursuing their grievances. Established precedent holds that specific actions taken during investigations could constitute abridgement of First Amendment rights if the government's motive was to retaliate against and chill protected expression. *See National Commodity and Barter Ass'n v. Archer,* 31 F.3d 1521, 1529–31 (10th Cir.1994); *Gibson v. United States,* 781 F.2d 1334, 1338, 1341 (9th Cir. 1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987); *Paton v. La-Prade,* 524 F.2d 862, 870 (3d Cir.1975).

■ Without passing on the merits of these *Bivens* claims, the APA does not preclude them because they are not characterizable as "agency action." Initiation of criminal investigations and the issuance of an accusation of anti-competitive conduct do not constitute a "rule, order, license, sanction [or] relief." 5 U.S.C. § 551(13). As such, the APA simply does not address or even contemplate these acts. "Not every 'action' or activity undertaken by an agency constitutes 'agency action' within the statutory context" of the APA. *Pharmaceutical Mfrs. Ass'n v. Kennedy,* 471 F.Supp. 1224, 1226 (D.Md.1979). The APA does not encompass review of "the day-to-day operations of a federal facility." *McClellan Ecological Seepage Situation v. Cheney,* 763 F.Supp. 431, 440 (E.D.Cal.1989). Plaintiffs may accordingly bring *Bivens* claims predicated upon these actions that the APA does not redress.[2] That the APA does not form the basis for

---

**2.** This approach is consistent with the Supreme Court's observation in *Bush* that "certain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme" of the civil service, and therefore would be redressable by *Bivens* claims. 462 U.S. at 385 n. 28, 103 S.Ct. at 2415 n. 28.

The suggestion could also be made, with some logical force, that the APA does not contemplate APA review of unauthorized actions of individuals not fairly attributable to the federal agency in question. Other theories of recovery, such as *Bivens,* would then apply.

review does not deprive the Court of jurisdiction to hear *Bivens* claims under 28 U.S.C. § 1331. "The 'final agency action' standard of the APA [is not] a general limitation upon federal question jurisdiction." *Lukens Steel Co. v. Donovan,* 511 F.Supp. 463, 466 (E.D.Pa.1981).

■ A question remains, however, as to whether the partial waiver of sovereign immunity contained in section 702 of the APA, and by implication the preclusion of monetary relief, applies to agency activity falling outside the definition of "agency action." The Ninth Circuit held that the waiver of sovereign immunity for nonmonetary relief is not limited to instances of "agency action" as technically defined in 5 U.S.C. § 551(13). *Presbyterian Church v. United States,* 870 F.2d 518, 525 (9th Cir.1989). The court's holding was in the context of permitting the plaintiff to seek injunctive relief against the Immigration and Naturalization Service; specifically, to enjoin the INS from conducting covert surveillance of a church alleged to be in violation of the church's First and Fourth Amendment rights. *Id.* at 520–21. The INS argued that the government had not waived sovereign immunity from suit under section 702 because the challenged activity—the surveillance—was not "agency action" as defined in the APA. *Id.* at 524. Without deciding whether surveillance alone constitutes agency action, *id.* at 525 n. 8, the Ninth Circuit rejected INS' limitation of section 702, ruling that "[n]othing in the language of the [1976] amendment [to section 702] suggests that the waiver of sovereign immunity is limited to claims challenging conduct falling in the narrow definition of 'agency action'...." *Id.* at 525.

Assuming the validity of the Ninth Circuit's reasoning, section 702 could be construed, following the analysis of *Bush* and *Chilicky,* as congressional intent to preclude the availability of monetary relief in all cases against federal officers, even those alleging

unconstitutional activity that is outside the purview of the APA. If section 702's waiver of sovereign immunity for injunctive relief, and concomitant withdrawal of monetary relief, applies universally—that is, even in cases where agency activity would be unreviewable under the APA—this Court would then be confronted with the issue of whether Congress could completely eliminate the availability of *Bivens* relief without providing any substitute means of reviewing or redressing unconstitutional conduct of virtually all federal officers. That Congress would have intended such a result is difficult to accept. Fortunately, the Court need not address this issue because the Court need not adopt the Ninth Circuit's reasoning in *Presbyterian Church.* Other courts have held to the contrary. *See, e.g., Paradyne Corp. v. United States Dep't of Justice,* 647 F.Supp. 1228, 1231 (D.D.C.1986) ("By its own terms, Section 702 provides a waiver of sovereign immunity only if the action complained of is an agency action and no other relevant statute expressly or impliedly forbids suit against the government.").[3]

In conclusion, Plaintiffs' claims relating to the administration of the Vallecitos Unit as described *supra* involve acts definable as "agency action" within the meaning of the APA. Because the APA limits available remedies to injunctive relief, the APA preempts *Bivens* claims predicated upon agency action. Plaintiffs' *Bivens* claims regarding the alleged criminal investigations and antitrust accusation, assuming they are otherwise legally sufficient, are not preempted by the APA because they involve acts not characterizable as agency action.

## II. WHETHER PLAINTIFFS' CLAIM UNDER 42 U.S.C. § 1981 ARE ACTIONABLE AGAINST THE FEDERAL GOVERNMENT

■ Defendants move to dismiss Plaintiffs' claim under 42 U.S.C. § 1981 on the grounds

---

**3.** And clearly, sovereign immunity does not bar *Bivens* actions. "*Bivens* and its progeny ... hold implicitly that sovereign immunity does not bar damages actions against federal officials in their individual capacity for violation of a person's constitutional rights...." *Beller v. Middendorf,* 632 F.2d 788, 798 n. 5 (9th Cir.1980) (citations

omitted). *Cf. Bivens,* 403 U.S. at 410, 91 S.Ct. at 2012 (Harlan, J., concurring) ("However desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit.").

that section 1981 does not apply to the federal government. Defendants cite 42 U.S.C. § 1981(c), which states, "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." Defendants also refer to *Espinueva v. Garrett,* 895 F.2d 1164, 1165 (7th Cir.), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 751 (1990), for the ostensible proposition that section 1981 does not apply to the federal government.

*Espinueva* is not dispositive; the Seventh Circuit merely emphasized the Supreme Court's ruling that section 717 of Title VII constitutes the exclusive remedy for federal government discrimination in the *employment* context. 895 F.2d at 1165 (citing *Brown v. General Services Admin.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). No authority of which the Court is aware exists for the proposition that section 1981 is inapplicable against the federal government for non-employment racial discrimination— and in fact, the law has been otherwise for 20 years or more. *See Premachandra v. Mitts,* 753 F.2d 635, 641 n. 7 (8th Cir.1985); *City of Milwaukee v. Saxbe,* 546 F.2d 693, 703 (7th Cir.1976); *Baker v. F & F Inv. Co.,* 489 F.2d 829, 833 (7th Cir.1973); *NAACP v. Levi,* 418 F.Supp. 1109, 1117 (D.D.C.1976).

Nor is subsection (c) helpful to Defendants' assertion. Section 1981(c) was incorporated by virtue of the 1991 amendments to the Civil Rights Act. Congress' intent was to overrule *Jett v. Dallas Ind. Sch. Dist.,* 491 U.S. 701, 735, 109 S.Ct. 2702, 2722–23, 105 L.Ed.2d 598 (1989), in which the Supreme Court held that 42 U.S.C. § 1983 provides the exclusive remedy for violation by state actors of the rights guaranteed in section 1981. In other words, Congress clarified that both section 1983 and section 1981 may be utilized to redress discriminatory state action. *Gallardo v. Board of County Comm'rs,* 857 F.Supp. 783, 786 (D.Kan.1994). The reference to nongovernmental discrimination is simply a codification of the holding of *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), that section 1981 addresses private as well as state discrimination. *See* H.Rep. No. 102–40(I),

102d Cong., 1st Sess. 92, *reprinted in* 1991 U.S.S.C.A.N. 549, 630. Congress intended to expand the scope of civil rights protection, not limit it.

Wherefore,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants' motion to dismiss be, and hereby is, granted in part. Plaintiffs' *Bivens* claims relating to the alleged mismanagement of the Vallecitos Unit are dismissed; *Bivens* claims regarding the alleged criminal investigations and the antitrust accusation, as well as the section 1981 claim, may stand.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to amend be, and hereby is, granted.