Robert WILLIAMS, et al., Plaintiffs,

v.

Daniel R. GLICKMAN, Secretary, U.S.
Dept. of Agriculture, Defendant.

Civil Action No. 95–1149 (TAF).

United States District Court,
District of Columbia.

May 21, 1996.

Rina Marian Goodman, Speiser, Krause, Madole & Lear, Rosslyn, VA, Les Mendelsohn, James W. Myart, Jr., Speiser, Krause, Madole & Mendelsohn, Jackson, San Antonio, TX, for plaintiffs.

Michael Sitcov, Terry M. Henry, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Pending before the Court is the defendant's Motion for Judgment, in Part, on the Pleadings. Having considered the arguments and authorities presented in the briefs filed by the parties and the argument of counsel at the March 8, 1996 hearing, the Court grants the defendant's motion for the reasons that follow.

## I. BACKGROUND

The plaintiffs, former applicants for federal farm loans or assistance with farm loans, brought this civil rights action against Daniel R. Glickman, the Secretary of the United States Department of Agriculture (the "Secretary"), in his official capacity. They claim that the former Farmers Home Administration ("FmHA") of the United States Department of Agriculture ("USDA") discriminated against them in connection with their loan applications because of their race or national origin.

The FmHA[1] was the credit agency for agriculture in the USDA, and was statutorily authorized to make loans to farmers who had trouble obtaining credit from commercial institutions. *See* Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.* The FmHA made loans to farmers directly,[2] and guaranteed loans made by commercial institutions.

The plaintiffs seek damages and equitable relief resulting from the FmHA's alleged discrimination. They raise several constitutional claims (based on the Fifth, Thirteenth and Fourteenth Amendments); claims based on several federal civil rights statutes (42 U.S.C. §§ 1981, 1982 and 42 U.S.C. § 2000d *et seq.*, Title VI of the Civil Rights Act of 1964 ("Title VI")); a claim under the Equal Credit Opportunity Act, 15 U.S.C. § 1691

---

**1.** The FmHA no longer exists; in 1994, it was reorganized, and its functions were transferred into the Consolidated Farms Service Agency of the USDA.

**2.** Such loans included farm ownership and farming operation loans. *See, e.g.,* 7 C.F.R. §§ 1941.2, 1941.12, 1941.14, 1943.2, 1943.12, 1943.16, 1945.102, 1945.152.

("ECOA"); and a claim for fraud and misrepresentation.

The Secretary's Motion for Judgment, in Part, on the Pleadings asserts that all of the plaintiffs' claims for damages (except those brought under ECOA) are barred by sovereign immunity and should be dismissed; and that plaintiffs' claims under the Thirteenth and Fourteenth Amendments, and under 42 U.S.C. §§ 1981 and 2000d, state no cause of action and should also be dismissed.[3]

## II. DISCUSSION

The plaintiffs have withdrawn their claims for damages (1) under the Fifth Amendment; (2) under §§ 1981 and 1982; and (3) for fraud and misrepresentation. They have also abandoned all of their claims under the Thirteenth and Fourteenth Amendments. The Court will grant the Secretary's motion with respect to these claims as unopposed.

Two contested claims remain: the plaintiffs' claim for equitable relief under 42 U.S.C. § 1981 ("§ 1981") and their claims under Title VI.

### A. *42 U.S.C. § 1981*

█ Section 1981 gives all citizens of the United States "the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." Section 1981(c), which was added to § 1981 by the Civil Rights Act of 1991, further provides that "[t]he rights protected by this section are protected against *impairment by nongovernmental discrimination and impairment under color of State law.*" (emphasis added).

The Secretary points out that the discrimination alleged here took place under federal law: the FmHA is said to have discriminated in connection with the plaintiffs' federal farm loan applications. Thus, argues the Secretary, because the alleged discrimination here is neither "*nongovernmental*" nor "*under color of State law,*" the plaintiffs' claim under § 1981 is precluded by the plain language of § 1981(c).

█ The Court agrees that the plain language of § 1981(c) bars the plaintiffs' claim of federal discrimination. While specifically providing that rights under the statute are protected against impairment by private entities and impairment "under color of State law," § 1981(c) does not address impairment by the federal government. There is no indication that the statute's designation of impairment by private entities and impairment "under color of State law" is meant to be merely suggestive or illustrative; § 1981(c) does not use language such as "including" or "for example" which would compel such an open-ended reading of the statute. *See Puerto Rico Maritime Shipping Authority v. I.C.C.,* 645 F.2d 1102 (D.D.C. 1981) (use of the word "including" indicates that the list which follows is illustrative, not exclusive). Indeed, it is instructive to compare § 1981(c) with § 1981(b), which provides, illustratively, that "the term 'make and enforce contracts' *includes* the making, performance, modification, and termination of contracts...." 42 U.S.C. § 1981(b) (emphasis added). Where Congress includes language in one section of a statute but omits it in another section of the same statute, "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Brown v. Gardner,* —— U.S. ——, ——, 115 S.Ct. 552, 556, 130 L.Ed.2d 462 (1994).

The plaintiffs do not seriously contest that the language of § 1981(c) bars their claim here; they don't analyze or even mention the key statutory language in any of their briefs. Rather, concentrating on legislative history and statements of legislative "purpose" found elsewhere in the statute, they assert that the statute can't possibly mean what it says. The plaintiffs argue that: (1) before the 1991 amendment, the courts permitted § 1981 suits involving discrimination by the federal government[4]; (2) the legislative history does

---

3. The Secretary's motion, however, leaves several of the plaintiffs' claims unaffected: damages and equitable relief under ECOA; and equitable relief based on the Fifth Amendment, 42 U.S.C. § 1982 and on fraud and misrepresentation.

4. For pre-amendment cases permitting § 1981 suits for federal discrimination, *see N.A.A.C.P. v. Levi,* 418 F.Supp. 1109, 1117 (D.D.C.1976); *Premachandra v. Mitts,* 753 F.2d 635, 641 n. 7 (8th Cir.1985); *City of Milwaukee v. Saxbe,* 546 F.2d

not reveal a Congressional intent to forbid suits involving federal discrimination; (3) the legislative history and statutory statements of purpose suggest that Congress intended to *expand* federal remedies under § 1981, not restrict them; (4) therefore, Congress could not have intended to eliminate the right to sue under § 1981 for the federal government's discrimination; (5) the statute, then, must be construed to permit such suits, because to do otherwise would lead to an absurd result. *See United States v. American Trucking Assoc., Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940).

■ However, the "strong presumption" that a statute's plain language expresses congressional intent is rebutted only in "rare and exceptional circumstances," where a contrary legislative intent is "clearly expressed." *Ardestani v. I.N.S.*, 502 U.S. 129, 136, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (internal citations omitted). *See also Ratzlaf v. United States*, 510 U.S. 135, 147, 114 S.Ct. 655, 662, 126 L.Ed.2d 615 (1994) ("we do not resort to legislative history to cloud a statutory text that is clear").

■ Here, § 1981(c)'s scant legislative history states only that subsection (c) "codifies the holding of *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), under which section 1981 prohibits private, as well as governmental, discrimination." 137 Cong.Rec. S 15, 473 (Oct. 30, 1991) (statement of Sen. Dole); 137 Cong.Rec. H 9,543 (Nov. 7, 1991) (statement of Rep. Hyde); *see also* 137 Cong.Rec. H 9,526 (Nov. 7, 1991) (statement of Rep. Edwards). Although the term "governmental" certainly could refer to discrimination by the federal government, it is not clear that it does. Section 1981(c)'s inconclusive [5] legislative history

fails to overcome the "strong presumption" that § 1981(c)'s clear statutory language expresses Congress's intent. *Ardestani v. I.N.S.*, 502 U.S. 129, 135, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991).

■ Nor does any other language in the Civil Rights Act of 1991 trump the specific language of § 1981(c). It is true that Congress's statement of the Act's purposes indicates an intent to "[expand] the scope of relevant civil rights statutes" in response to recent Supreme Court cases which Congress saw as weakening federal civil rights protections. *See* 42 U.S.C. § 1981 (note). However, the Court does not have the authority to rewrite a clear, specific statutory provision even if it believed that such a provision was inconsistent with a general statement of purpose. *Aeron Marine Shipping Co. v. United States*, 695 F.2d 567, 576 (D.C.Cir.1982) (if there is an "inescapable conflict" between general and specific statutory provisions, the specific will prevail).

■ The Court must "presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992). Even if the Court suspected that Congress did not intend to preclude § 1981 suits for federal discrimination, the law has long been settled that except under extraordinary circumstances, the Court must apply the plain language of the statute. *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 4 L.Ed. 529 (1819) ("[i]n most cases, the plain meaning of a provision not contradicted by any other provision in the same instrument, is not to be disregarded because we believe the framers of the instrument could not intend what they say"); *United States v. Locke*, 471 U.S. 84, 96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985) (courts are

---

693, 703 (7th Cir.1976); *Baker v. F & F Inv. Co.*, 489 F.2d 829, 833 (7th Cir.1973).

**5.** As further evidence of Congress's intent, the plaintiffs cite a House Judiciary Committee Report addressing subsection (c), which states that "[t]his subsection is intended to codify *Runyon v. McCrary* ... [where] the Court held that Section 1981 prohibited intentional racial discrimination in private, as well as public contracting. The Committee intends to prohibit racial discrimination in all contracts, both public and private."

H.Rep. No. 102–40(II), 102d Cong., 1st Sess. 731 (1931), *reprinted in* 1991 U.S.C.C.A.N. 694, 731. This language—which broadly indicates intent to prohibit racial discrimination in *all* contracts— may be compelling, but the Court notes that this House Report was prepared in connection with a prior version of the Act that was rejected by Congress. The Court has considered this statement when evaluating the legislative history, but finds that since it was not prepared in connection with the statute at issue, it is not entitled to great weight.

not licensed "to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result"). Weighing the inconclusive legislative history and the statute's general statement of purpose against plain, unambiguous statutory language, the Court must apply the plain language of the statute[6] and dismiss the plaintiffs' § 1981 claim[7] because the plaintiffs do not allege impairment of rights by nongovernmental discrimination or impairment under color of state law.[8] *See* 42 U.S.C. § 1981(c). *See also Locke*, 471 U.S. 84, 96, 105 S.Ct. 1785, 1793 ("deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that the legislative purpose is expressed by the ordinary meaning of the words used").

**B.** *Title VI of the Civil Rights Act of 1964*

▇ The plaintiffs also seek relief under 42 U.S.C. § 2000d *et seq.*, commonly known as Title VI of the Civil Rights Act of 1964. Title VI provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any *program or activity* receiving federal financial assistance.

(emphasis added). The terms "program or activity" and "program" are statutorily defined to mean departments or instrumentalities of state or local governments, colleges and certain public systems of education, certain corporations and other private organizations, and other entities established by two or more of the above entities. 42 U.S.C. § 2000d–4a.

▇ Significantly, the statutory definitions of "program or activity" and "program" do not include federal agencies. Thus, Title VI does not apply to programs conducted directly by federal agencies. *Fagan v. Unit-*

---

**6.** Especially in view of the fact that the plaintiffs may seek equitable relief here under § 1982, the Court does not conclude that the result reached by applying the statute's plain meaning is absurd. *Sturges*, 17 U.S. 122 (departing from the plain, uncontradicted meaning of a statutory provision is appropriate only when "the absurdity and injustice of applying the provision to the case would be so monstrous that all mankind would without hesitation, unite in rejecting the application").

**7.** The Court is aware that § 101 of the Civil Rights Act of 1991 (the "Act")—which added subsections (b) and (c) to § 1981—does not apply to conduct occurring before November 21, 1991, the effective date of the Act. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). In view of the Court's ruling that the plaintiffs are not entitled to equitable relief for conduct occurring after the Act's effective date, and given the plaintiffs' concession that they may only seek declaratory relief under § 1981, the Court must decide whether to allow the plaintiffs to seek such relief for pre-Act conduct.

When determining if declaratory relief is appropriate, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Because the alleged discriminatory conduct

stopped being actionable on November 21, 1991, no "substantial controversy" now exists which would warrant the issuance of a declaratory judgment. *See id.* No purpose would be served by granting such a "declaration of law without implications for practical enforcement upon the parties." *Flesch v. Eastern Pa. Psychiatric Inst.*, 472 F.Supp. 798, 801–02 (E.D.Pa.1979) (quoting *Browning Debenture Holders' Committee v. DASA Corp.*, 524 F.2d 811, 817 (2d Cir.1975)). Thus, to the extent the plaintiffs seek declaratory relief for pre-Act conduct under § 1981, the Court will grant the plaintiff's motion with respect to such conduct as well.

**8.** The Court notes that the United States District Court for the District of New Mexico has found that § 1981 suits may be brought against the federal government. *La Compania Ocho, Inc. v. U.S. Forest Service*, 874 F.Supp. 1242, 1251 (D.N.M.1995). The *La Compania Ocho* court made no attempt to square its holding with the language of § 1981(c) and cited no legislative history supporting its conclusion. Instead, the *La Compania Ocho* court reasoned that because Congress intended to expand civil rights protection when it amended the Civil Rights Act of 1991, it could not have intended subsection (c) to limit civil rights protection. *Id.* Because the Court believes that "judicial inquiry is complete" after a judge construes an unambiguous statute, *see Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992), the Court declines to adopt the *La Compania Ocho* court's reasoning.

*ed States Small Business Administration,* 783 F.Supp. 1455, 1456 n. 10 (D.D.C.1992) (Hogan, J.), *aff'd,* 19 F.3d 684 (D.C.Cir.1992). Even before the terms "program or activity" and "program" were statutorily defined in 1988, courts had held that Title VI "was meant to cover only the situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary." *Soberal–Perez v. Heckler,* 717 F.2d 36, 38 (2d Cir. 1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984).

Supporting their position that Title VI applies to programs conducted directly by federal agencies, the plaintiffs cite several cases permitting actions against federal agencies for termination of federal funding to federal grant recipients engaged in discrimination, *see Young v. Pierce,* 544 F.Supp. 1010 (E.D.Tex.1982); *Gautreaux v. Romney,* 448 F.2d 731 (7th Cir.1971); *NAACP v. Brennan,* 360 F.Supp. 1006 (D.D.C.1973), a case permitting a Title VI suit against an agency where that agency was derelict in enforcing Title VI with respect to federal grantees, *Freedom Republicans, Inc. v. Federal Election Comm'n,* 788 F.Supp. 600 (D.D.C.1992) (Richey, J.), *vacated,* 13 F.3d 412 (D.C.Cir. 1994), and a case involving state and local entities that were receiving federal grants. *Guardians Assoc. v. Civil Service Comm'n,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). None of these cases construed the statutory definitions at issue here, and none permitted Title VI suits involving directly administered federal programs.

The plaintiffs further argue that Title VI must apply to programs directly administered by the federal government because the USDA has a regulation forbidding race discrimination in such programs. *See* 7 C.F.R. § 15.51.[9] The problem with this argument is that this regulation does not provide a cause of action under Title VI; indeed, it specifical-ly states that it doesn't apply to the regulation effectuating Title VI.[10]

▮ The plaintiffs claim that it would be "inconceivable" that Title VI should not apply to discrimination by federal agencies. However, the language of the statute and the cases addressing the issue support just that conclusion. The Court does not have the authority to redraft an unambiguous statute and ignore established case authority. Therefore, the Court will also dismiss the plaintiffs' Title VI claims.

## III. CONCLUSION

The plaintiffs originally sought the following relief in this case: equitable relief and damages under the Fifth, Thirteenth and Fourteenth Amendments to the United States Constitution; equitable relief and damages under 42 §§ 1981 and 1982; equitable relief and damages under Title VI of the Civil Rights Act of 1964; equitable relief and damages for fraud and misrepresentation.

The Court hereby grants the Secretary's motion and dismisses the following claims of the plaintiffs' complaint: damages claim under the Fifth Amendment (unopposed); any claim under the Thirteenth and Fourteenth Amendments (unopposed); damages claims under §§ 1981 and 1982 (unopposed); equitable claim under § 1981; any claim under Title VI of the Civil Rights Act of 1964; and damages for fraud and misrepresentation (unopposed). The Secretary did not challenge the following claims, which will remain in the case: damages and equitable relief under the Equal Credit Opportunity Act; equitable relief under the Fifth Amendment and 42 U.S.C. § 1982; and equitable relief for fraud and misrepresentation.

---

**9.** 7 C.F.R. § 15.51 provides that:

No agency, officer, or employee of the United States Department of Agriculture, shall exclude from participation in, deny the benefits of, or subject to discrimination any person in the United States on the ground of race, color, religion, sex, age, handicap, or national origin under any program or activity administered by such agency, officer, or employee.

**10.** This regulation states that it covers direct programs and activities of USDA that are not subject to the regulations in "Subpart A of this part." *See* 7 C.F.R. § 15.50. Subpart A is the regulation effectuating Title VI. 7 C.F.R. §§ 15.1–12. Thus, the cited regulation, 7 C.F.R. § 15.21 covers programs not subject to the regulation effectuating Title VI.