Eddie WISE and Dorothy Monroe–Wise, et al., Plaintiffs,

v.

Dan GLICKMAN, Secretary, U.S. Department of Agriculture, Defendant.

No. CIV.A. 00–2508(JR).

United States District Court, District of Columbia.

March 31, 2003.

Stephon J. Bowens, Executive Director, Marcus Jimison, Director of Litigation, Durham, NC, for Plaintiffs.

Michael Sitcov, Judry L. Subar, Department of Justice, Civil Division, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

ROBERTSON, District Judge.

Plaintiffs are African–American and female farmers who claim that the United States Department of Agriculture (USDA) discriminated against them on the basis of race and sex by denying them credit and other benefits under farm programs. Plaintiffs bring their claims under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.*, the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the Fifth and Thirteenth Amendments to the Constitution of the United States, and several regulations of the United States Department of Agriculture. The government moves to dismiss certain of these claims under Fed.R.Civ.P. 12(b)(6), to strike plaintiffs' demand for a jury trial, and for a stay of proceedings in this case.

## Background

This case is another in a series of suits filed after Congress, responding to reports that USDA dismantled its civil rights enforcement program in the early 1980's, extended the statute of limitations to October 21, 2000 for "eligible complaints" of discrimination alleged to have taken place at USDA between 1981 and 1996. *See* Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub.L. No. 105–277, Div. A § 101(a), § 741 112 Stat. 2681 (Oct. 21, 1998) (codified at 7 U.S.C. § 2279 Notes). One of those suits was a class action, filed on behalf of African–American farmers, that was settled by consent decree allowing individual plaintiffs to present their claims for compensation. *Pigford v. Glickman,* 185 F.R.D. 82 (D.D.C.1999), *aff'd,* 206 F.3d 1212 (D.C.Cir. 2000). Three other suits, *Keepseagle v. Veneman,* No. 99–3119 (suit by Native American farmers), *Love v. Veneman,* No. 00–2502 (suit by female farmers), and *Garcia v. Veneman,* No. 00–2445 (suit by Hispanic farmers), continue in litigation.

Here, plaintiffs filed their complaint on October 19, 2000, alleging that defendant's credit agencies, which are authorized to make loans to farmers who are unable to secure credit from commercial lenders, administered and maintained USDA's farm credit program in a discriminatory fashion. They specifically allege that USDA discriminated against African–American and female farmers (1) in the processing of applications for farm credit, loan servicing, and non-credit benefits; (2) by placing a disproportionate number of loan funds of African–American and female farmers in supervised bank accounts; (3) by maintaining a local county administration program under which local administrators are not held accountable for discriminatory conduct; and (4) by failing to maintain a competent Office of Civil Rights to process

and investigate discrimination complaints in a timely fashion.

Defendant now seeks to dismiss all claims made under the APA and Title VI, as well as all claims of failure to investigate discrimination complaints. Defendant also moves to dismiss all claims by certain of the named plaintiffs. Finally, defendant moves to strike plaintiffs' demand for a jury trial, and seeks a stay pending the class certification decision in *Love.*

### Analysis

#### Standards on a Motion to Dismiss

A complaint may not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). On a Rule 12(b)(6) motion to dismiss, the complaint must be construed in the light most favorable to plaintiff, and plaintiff will have "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994) (internal citations omitted).

#### Claims Made Under the APA

■ The government first moves to dismiss all claims under the APA. No other judge is bound by my decision in *Love,* No. 00–2502, mem. op. of Dec. 13, 2001, at 12–14, but I believe that I am. In that case, I followed the rule that APA review is not available for agency action for which there is an adequate alternative remedy in court, *Love,* mem. op. at 13–14; *see Women's Equity Action League v. Cavazos,* 906 F.2d 742, 750–51 (D.C.Cir.1990); *Council of & for the Blind of Del. County Valley, Inc. v. Regan,* 709 F.2d 1521, 1531–33 (D.C.Cir.1983) (en banc). ECOA provides an adequate remedy for credit discrimination claims and claims related to credit discrimination, such as failure to investigate complaints of discrimination in the credit transaction process. I concluded, accordingly, that no such claims may be pursued under the APA,[1] and ruled that failures to investigate complaints are not "credit transactions" under the meaning of ECOA. *Love,* mem. op. at 13. Plaintiffs' allegations of failure to investigate civil rights complaints do not state claims under either ECOA or the APA, and must be dismissed in this case as well.[2]

■ One claim in the complaint may be actionable under the APA. Leonard Cooper alleges that the USDA discriminated against him by "erect[ing] obstacle after obstacle," Complaint at ¶ 31, to his attempts to market his organic peanut crop in 1991. A final agency action that impeded Cooper's ability to market his crop, if not a credit transaction under ECOA, would be actionable under the APA. 5 U.S.C. §§ 702, 704. The government argues, however—and not unreasonably—

---

1. For the same reason, plaintiffs' attempt to invoke the doctrine of non-statutory review for USDA's actions must fail. Non-statutory review actions may be proper only when "a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision...." *Chamber of Commerce of United States v. Reich,* 74 F.3d 1322, 1327 (D.C.Cir.1996); *see Maxon Marine, Inc. v. Dir., Office of Workers' Comp. Programs,* 39 F.3d 144, 146 (7th Cir.1994) ("When a statute specifies a procedure for obtaining judicial review of a federal agency's actions, that procedure normally is exclusive....") (internal citations omitted).

2. Plaintiffs remark that a distinction should be made between failure to investigate credit claims and failure to investigate non-credit claims, but their complaint does not appear to allege any instances of failure to investigate charges of discrimination relating to non-credit claims.

that the delphic description of this claim in the complaint does not provide adequate notice of the nature of the claim, so that Cooper should not be allowed to pursue it. *See Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C.Cir.1983) (allegation in complaint must give "the defendant[ ] fair notice of the plaintiff's claim and the grounds upon which it rests"). The complaint does not identify a final agency action that created an obstacle to his marketing of his peanut crop. Cooper may have twenty (20) days from the filing of this memorandum to amend or supplement the complaint by providing detailed factual allegations more clearly stating his APA claim. *See Empagran S.A. v. F. Hoffman–La Roche, Ltd.*, No. 00–1686, 2001 WL 761360 at *4 (D.D.C. June 7, 2001) (requiring plaintiffs to supplement amended complaint with more detailed factual allegations), *rev'd on other grounds*, 315 F.3d 338 (D.C.Cir. 2003). If he fails to do so, this claim will be dismissed.[3]

### Res Judicata (Claim Preclusion) effect of the Pigford litigation

 The government also moves to dismiss certain claims under the doctrine of *res judicata*, or claim preclusion, which dictates that

> the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate—even if they chose not to exploit that opportunity—whether the initial judgment was erroneous or not.

The judgment bars any further claim based on the same nucleus of facts, for it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.

*Page v. United States*, 729 F.2d 818, 820 (D.C.Cir.1984) (internal quotations and footnotes omitted); *see Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C.Cir.1981). In order to invoke this doctrine successfully, defendant must establish identity of the cause of action in both suits; identity of parties in both suits; and a final judgment on the merits rendered by a court of competent jurisdiction. *Jane Does I through III v. District of Columbia*, 238 F.Supp.2d 212, 217 (D.D.C.2002). *Res judicata* "does not apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–81, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (internal quotation and citations omitted).

 The claims of those plaintiffs who were part of the *Pigford* class are obviously precluded by the doctrine. In *Pigford*, Judge Friedman certified a class consisting of "[a]ll African American farmers who (1) farmed, or attempted to farm, between January 1, 1981 and December 31, 1996; (2) applied to the United States Department of Agriculture (USDA) during that time period for participation in a federal farm credit or benefit program and who believed that they were discriminated against on the basis of race in USDA's

---

**3.** The government also raises the argument that Cooper is estopped from raising any claims under the principles of *res judicata*. That argument is addressed at pp. 129–130, *infra*.

The government has not argued that Cooper's "peanut claim" does not fall within the special statute of limitations approved by

Congress in 1998, and it is not clear from the complaint whether that claim satisfies the statute of limitations. As noted in both *Love*, mem. op. at 8, and *Garcia*, mem. op. of March 20, 2002, at 3 n. 2, the statute of limitations issue with regard to these claims falls under the rubric of Fed.R.Civ.P. 12(b)(1), so the government is free to raise the issue at a later time, *see* Fed.R.Civ.P. 12(h)(3).

response to that application; and (3) filed a discrimination complaint on or before July 1, 1997, regarding USDA's treatment of such farm credit or benefit application." *Pigford,* 185 F.R.D. at 92. The class was certified under Fed.R.Civ.P. 23(b)(3), thereby allowing putative class members to opt out of that lawsuit. *Id.* at 94. African–American farmers who opted out of *Pigford* are not bound by the judgment in that case. *See, e.g., Kyriazi v. W. Elec. Co.,* 647 F.2d 388, 393 (3d Cir.1981); *Valentino v. United States Postal Serv.,* No. 77–0331, 1978 WL 110 at *2 n. 8 (D.D.C. June 14, 1978). On the other hand, persons who did not opt out and who pursued their claims under the *Pigford* consent decree[4] cannot raise claims here that they raised, or could have raised, in *Pigford. See Peters v. Nat'l R.R. Passenger Corp.,* 966 F.2d 1483, 1487 (D.C.Cir.1992) (*res judicata* barred new suit by plaintiff who had not opted out of previous class action because he had not received notice).

Eddie Wise, Dorothy Monroe–Wise, and Matthew Grant (who is now deceased, and whose claims are being advanced by Gary R. Grant, the executor of his estate) all opted out of the *Pigford* class. Their claims are not precluded. Florenza Grant did not opt out of *Pigford.* She has withdrawn her claims here, and her suit will be dismissed. Leonard C. Cooper and Percy L. Gooch, Jr. present slightly different problems. Neither of them opted out of the *Pigford* class, but both submit that they were excluded from the class by oper-

ation of the decisions of arbitrators in *Pigford.*

If a *Pigford* arbitrator deemed these plaintiffs ineligible for class membership under the consent decree, then it is difficult to fathom how they could be said to be barred from bringing their claims under the principle of claim preclusion. *See Hartman v. Wick,* 678 F.Supp. 312, 324 (D.D.C.1988) (*res judicata* applied "*only* with respect to those...[who] must...be deemed members of the...plaintiff class [of a previous litigation]") (emphasis in original). Barring persons from seeking relief here when they have been declared ineligible for membership in the *Pigford* class would deprive them of any opportunity to litigate their claims. *Cf. Neumann v. Vidal,* 710 F.2d 856, 860 (D.C.Cir.1983) (no *res judicata* bar when there was "no evidence that the parties had a full and fair opportunity to litigate [their] claims" in prior proceeding).

In Cooper's case, the *Pigford* arbitrator has apparently never ruled on whether Cooper ever applied for credit in a fashion that passes muster under the *Pigford* consent decree. *See* Plaintiffs' Ex. 5.[5] If the arbitrator decides against Cooper, he will be excluded from the *Pigford* class and will be allowed to pursue his claim here. The motion to dismiss Cooper's ECOA claims will be denied, pending further action by the *Pigford* arbitrator. Cooper's "peanut claim," described *supra* at 128, was dismissed by the *Pigford* arbitrator as not "cognizable as either a credit or a benefit

4. "Consent decrees generally are treated as final judgments on the merits and accorded res judicata effect." *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.,* 723 F.2d 944, 947 (D.C.Cir.1983).

5. Reference to the rulings of the *Pigford* arbitrators do not transform this into a decision on summary judgment, *see* Fed.R.Civ.P. 12(c), although these rulings are outside the pleadings. The Court is "allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation without triggering the conversion requirement." *Jane Does I through III,* 238 F.Supp.2d at 216 (internal quotation omitted); *see Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C.Cir.1979); *Baker v. Henderson,* 150 F.Supp.2d 13, 15 (D.D.C.2001).

claim under the Consent Decree." Plaintiffs' Ex. 5 at 6. He had no fair and full opportunity to litigate that claim in *Pigford*, and claim preclusion will not bar the claim here.

Gooch will also be permitted to pursue his claims here, if it is ultimately determined that they are not within the scope of the *Pigford* class claim. Gooch also presents claims based on events that allegedly took place after the dates that limit the *Pigford* class, *see* Complaint at ¶ 38. Those credit claims may go forward here, regardless of whether or not Gooch is ultimately determined to be a member of the *Pigford* class, because Gooch could not pursue those claims in the *Pigford* case. *See Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 79 (D.C.Cir.1997) ("Litigation of the validity of one past course of conduct is not the same claim as . . . litigation over the validity of similar conduct occurring after the acts covered by the initial litigation") (internal citations omitted).[6] Indeed, in approving the *Pigford* consent decree, Judge Friedman suggested that *Pigford* class members would be free to file new cases based on later acts of discrimination and encouraged them to do so. *See Pigford*, 185 F.R.D. at 112.

 Finally, the government moves to dismiss those of plaintiffs' class claims that overlap with *Pigford*.[7] Plaintiffs appear to argue that they should be allowed to maintain class claims that would encompass claims made by *Pigford* class members *who did not opt out of that litigation*, because the *Pigford* consent decree provides no forward-looking injunctive relief, *see Pigford*, 185 F.R.D. at 110.[8]

*Pigford* class members who did not opt out may not pursue claims for injunctive relief here. Under the "transactional" approach of *res judicata*, which is followed in this Circuit, *see U.S. Indus., Inc. v. Blake Constr. Co., Inc.*, 765 F.2d 195, 205 (D.C.Cir.1985), once a claim "is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even . . . if seeking a different remedy." *Yoon v. Fordham Univ. Faculty & Admin. Retirement Plan*, 263 F.3d 196, 200 (2d Cir.2001) (internal quotations omitted) (discussing transactional approach under New York law); *accord Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 270 (1st Cir.1996); *see* Restatement (Second) of Judgments § 24(1) (1982).[9]

6. Gooch's claims of failure to investigate will be dismissed, for previously mentioned reasons.

7. The discussion of class claims might be more appropriately had when plaintiffs move to certify the class. The specific issue of class claim preclusion due to *Pigford* is appropriately dealt with here, however, without prejudice to either side's position on class certification, so that plaintiffs may adjust the definition of the class they seek to represent.

8. From the face of the complaint, Gooch is the sole named plaintiff who can be said to have made any credit discrimination claim that postdates the *Pigford* time period.

9. Plaintiffs cite *Stanton* for the proposition that "[l]itigation of the validity of one past course of conduct is not the same 'claim' as . . . litigation challenging a rule in anticipation of its possible application to similar events occurring or expected to occur after the earlier lawsuit." 127 F.3d at 79 (citations omitted). However, the Second Circuit case primarily relied on by Stanton, *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86 (2d Cir.1997), actually held that plaintiffs were not precluded from bringing a claim based on ship voyages that were *identical but that occurred subsequent to* voyages that had been the subject of previous litigation, because the subsequent voyages constituted a separate transaction from their predecessors. 107 F.3d at 90. Nowhere do either *Stanton* or *Interoceanica* suggest that one could bring successive suits based on the exact same transaction but seeking different relief.

*Res Judicata (Claim Preclusion) as to Nellie D. Chamblee*

■ The government moves to dismiss the claim of Nellie D. Chamblee on the ground that she has previously filed two complaints in federal district court concerning the same loan servicing claim as to which she seeks relief here. In the complaint, Chamblee alleges that her local Farmers Home Administration (FmHA) office discriminated against her in 1989 on the basis of her gender when it suspended her loan servicing application and request for net recovery buyout. *See* Complaint at ¶ 46. In May 1990, Chamblee filed an administrative appeal with the National Appeals Division (NAD), seeking review of the suspension of her loan servicing request. NAD responded in June 1990 by informing Chamblee that it was suspending her appeal. Chamblee sued in the Eastern District of North Carolina for an order requiring NAD to hear her appeal. She lost on summary judgment, *see Chamblee v. Espy*, 907 F.Supp. 152, 154 (E.D.N.C.1995), but prevailed in the Fourth Circuit, *see Chamblee v. Espy*, 100 F.3d 15, 18 (4th Cir.1996). On remand, NAD confirmed the suspension of Chamblee's loan servicing application, and she sued again, challenging the suspension as arbitrary and capricious. *See* Plaintiffs' Ex. 2. This time Chamblee prevailed on summary judgment, and, on October 12, 1999, the district court ordered USDA to direct the Farmer's Service Agency to consider her loan servicing application on its merits. *See* Plaintiffs' Ex. 3.

There is no question that Chamblee's claims in this suit arise from the same "nucleus of facts," *Page*, 729 F.2d at 820, as the claims made in her previous suits; all three suits are based on the 1989 suspension of her application for loan servicing and a net recovery buyout.[10] However, it is questionable whether Chamblee could have raised the discrimination claims she raises here in her initial suit, as that suit sought to have the government process her administrative appeal, so any other claims made at that time may have been deemed premature. Furthermore, Congress had not yet tolled the statute of limitations for discrimination claims against the USDA at the time she filed her first suit. Neither had Congress tolled the statute of limitations when Chamblee filed her second suit, in 1997, so she could not have brought her current claims for relief then, either. As she has never had a fair and full opportunity to litigate her discrimination claims, they will not be dismissed now.

*Title VI Claims*

■ Title VI of the Civil Rights Act of 1964 provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The statute defines "program or activity" as the operations of departments, agencies, instrumentalities, and other sectors of state or local governments; colleges and certain public systems of education; local educational agencies and school systems; certain corporations and other private or-

---

10. In plaintiffs' response to the motion to dismiss, Chamblee argues that she is actually seeking relief for "ongoing acts of discrimination that have been perpetuated against Ms. Chamblee from 1988 to the present." The complaint, however, focuses only on the 1989 suspension, concluding with the statement that "Chamblee claims that the suspension of her loan servicing application and request for net recovery buyout was in violation of FmHA regulations...denying her equal protection under law because she is a woman...." Complaint at ¶ 46.

ganizations; and other entities established by a combination of two or more of the mentioned entities. 42 U.S.C. § 2000d–4a. This comprehensive definition does not include the operations of the federal government and its agencies, and, indeed, the caselaw recognizes that a plaintiff may not bring suit under Title VI for programs maintained directly by federal agencies. *See Williams v. Glickman*, 936 F.Supp. 1, 5 (D.D.C.1996) ("Title VI does not apply to programs conducted directly by federal agencies") (internal citation omitted); *Soberal–Perez v. Heckler*, 717 F.2d 36, 38 (2d Cir.1983) ("Title VI...was meant to cover only those situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary"); *Marsaw v. Trailblazer Health Enters., LLC*, 192 F.Supp.2d 737, 750 (S.D.Tex.2002) ("Title VI does not apply to programs administered directly by a federal agency"); *J. & L. Parking Corp. v. United States*, 834 F.Supp. 99, 104–05 (S.D.N.Y.1993) (plaintiff had no cause of action under Title VI with regard to programs administered directly by federal government).[11] Therefore, plaintiffs' claims under Title VI must be dismissed.

*Demand for a Jury Trial*

▇▇▇▇ The government's motion to strike plaintiffs' demand for a jury trial will be granted. "It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government," *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981), except when "Congress has *affirmatively and unambiguously* granted that right by statute" *Id.* at 168, 101 S.Ct. 2698 (emphasis supplied). Congress has not affirmatively and unambiguously granted the right to jury trial to persons bringing suit against the federal government under ECOA. *See* 15 U.S.C. § 1691 *et seq.*

*Motion to Stay Proceedings*

▇▇▇ Defendant moves to stay these proceedings in light of the fact that the female named plaintiffs here, as well as the putative class of female farmers in this case, overlap with the putative class in *Love*, where a motion for class certification is pending. Plaintiffs do not dispute that it is within the Court's power and discretion to issue such a stay, but they argue that the Court should, in weighing the interests of the parties in the application of a stay, consider the advanced age of many of the named plaintiffs.

The Court is sensitive to the fact that many of these plaintiffs are elderly, and that they have been waiting for their discrimination claims to be resolved for many years. Moreover, certain named plaintiffs here—African-American farmers who opted out of the *Pigford* class—will not be affected by the potential certification of

---

**11.** The case cited by plaintiffs to rebut the argument that Title VI does not apply to programs operated directly by the federal government, *Hills v. Gautreaux*, 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976), is not to the contrary; the discriminatory public housing program at issue in that case was administered by the Chicago Housing Authority, not by a federal agency. *See Hills,* 425 U.S. at 286–87, 96 S.Ct. 1538.

Plaintiffs also make mention of the fact that regulations applicable to USDA "emanate from Title VI and its progeny." These regula-

tions do indeed "effectuate the provisions of Title VI," 7 C.F.R. § 15.1(a), but specifically say that no person may be subjected to discrimination "under any program or activity of an applicant or recipient receiving Federal financial assistance from the Department of Agriculture or any Agency thereof." *Id.* Rather than helping plaintiffs, this language augments the government's position that a Title VI claim could be brought against the recipient of USDA funds but not the USDA or any of its agencies themselves.

the *Love* class, and staying the case as to these plaintiffs might be disadvantageous to them. However, neither is the Court willing to allow this case to advance on its merits while the *Love* class certification is being determined. Therefore, the motion for a stay will be granted, but plaintiffs have the option of seeking to bifurcate this case into two separate cases—one consisting of putative *Love* class members, and the other consisting of plaintiffs unaffected by *Love*.

＊ ＊ ＊ ＊ ＊ ＊

For the reasons set forth above, it is this 31st day of March 2003 **ORDERED** that all claims made under the APA are dismissed except for Leonard Cooper's "peanut claim." Cooper has 20 days to supplement the complaint by setting forth specific allegations showing that his "peanut claim" is actionable under the APA; if he fails to do so, that claim will be dismissed.

It is further **ORDERED** that all claims of discrimination because of USDA's failure to investigate complaints are dismissed.

It is further **ORDERED** that all claims made by Florenza Grant are dismissed.

It is further **ORDERED** that the motion to dismiss Leonard Cooper's claims is denied pending the *Pigford* arbitrator's decision on his *Pigford* class eligibility. If Cooper is deemed a proper *Pigford* class member, all of his claims save for his "peanut claim" (if it has not been dismissed) will be dismissed.

It is further **ORDERED** that the motion to dismiss Percy Gooch's claims is denied pending the *Pigford* arbitrator's decision on his *Pigford* class eligibility; if Gooch is deemed a proper *Pigford* class member, all of his claims save for his post-*Pigford* credit discrimination claims will be dismissed.

It is further **ORDERED** that the motion to dismiss Nellie Chamblee's claims is denied.

It is further **ORDERED** that all claims made under Title VI are dismissed.

It is further **ORDERED** that plaintiffs' demand for a jury trial is stricken.

And it is further **ORDERED** that the government's motion for a stay is granted, provided, however, that plaintiffs may move to bifurcate this case as set forth above.