IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
September 3, 2009 Session Heard at Knoxville

## LEE MEDICAL, INC. v. PAULA BEECHER ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section
Circuit Court for Williamson County
Nos. 08-144 & 08-146     Jeffrey S. Bivins, Judge**

---

**No. M2008-02496-SC-S09-CV - Filed May 24, 2010**

---

GARY R. WADE, J., dissenting.

While the majority's narrow interpretation of the statutory peer review privilege has appeal, I cannot reconcile its result with the basic principles of statutory construction. I must, therefore, respectfully dissent.

**I**

The central issue in this case is whether the scope of the peer review privilege set forth in Tennessee Code Annotated section 63-6-219(e) (Supp. 2009)[1] is broad enough to protect from discovery the audit of TriStar Health System's vascular access services at its member hospitals. Of course, our role in construing statutes is to ascertain and give effect to the

---

[1] Subsection (e) states, in relevant part, as follows:

All information, interviews, incident or other reports, statements, memoranda or other data furnished to any committee as defined in this section, and any findings, conclusions or recommendations resulting from the proceedings of such committee are declared to be privileged. All such information, in any form whatsoever, so furnished to, or generated by, a medical peer review committee, shall be privileged. The records and proceedings of any such committees are confidential and shall be used by such committee, and the members thereof only in the exercise of the proper functions of the committee, and shall not be public records nor be available for court subpoena or for discovery proceedings. . . . Nothing contained in this subsection (e) applies to records made in the regular course of business by a hospital or other provider of health care and information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee.

Tenn. Code Ann. § 63-6-219(e) (emphasis added).

legislative intent without unduly restricting or expanding the statute's intended scope. Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). To this end, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). Further, our duty is to construe a statute so that its component parts are consistent and reasonable, Cohen v. Cohen, 937 S.W.2d 823, 827 (Tenn. 1996), and "that no part will be inoperative." Tidwell v. Collins, 522 S.W.2d 674, 676 (Tenn. 1975).

The language in the first two sentences of subsection (e), when considered in conjunction with the definition of "medical review committee" and "peer review committee" in subsection (c),[2] is indeed quite broad. The majority asserts, however, that the breadth of the defined privilege is in "significant internal conflict" with the exception to the privilege for "records made in the regular course of business," which appears in the last sentence of subsection (e), and that this conflict "cannot be resolved by considering the text of the statute alone." To settle this purported ambiguity, the majority has created a novel term, "peer review proceeding," which is designed to limit the scope of the privilege to only those committee deliberations that "involve[] a physician's conduct, competence, or ability to practice medicine." The rationale for this approach lies primarily in Tennessee Code Annotated section 63-6-219(b)(1), which makes up only a portion of one of the six subsections within the statute: "[I]t is the stated policy of Tennessee to encourage committees made up of Tennessee's licensed physicians to candidly, conscientiously, and objectively evaluate and review their peers' professional conduct, competence, and ability to practice

---

[2] As the majority observes, the terms "medical review committee" and "peer review committee" in subsection (c) are interchangeable. They are defined as

> any committee of a state or local professional association or society . . . or a committee of any licensed health care institution, or the medical staff thereof, or a medical group practice, or any committee of a medical care foundation or health maintenance organization, preferred provider organization, individual practice association or similar entity, the function of which, or one (1) of the functions of which, is to evaluate and improve the quality of health care rendered by providers of health care service to provide intervention, support, or rehabilitative referrals or services, or to determine that health care services rendered were professionally indicated, or were performed in compliance with the applicable standard of care, or that the cost of health care rendered was considered reasonable by the providers of professional health care services in the area and includes a committee functioning as a utilization review committee . . . or as a utilization and quality control peer review organization . . . or a similar committee or a committee of similar purpose, to evaluate or review the diagnosis or treatment or the performance or rendition of medical or hospital services that are performed under public medical programs of either state or federal design.

Tenn. Code Ann. § 63-6-219(c).

medicine. . . ."

While the statute, as pointed out by the majority, may include inartful language, it is unambiguous as to the scope of the peer review privilege. To the contrary, both the plain language of the statute and its legislative history demonstrate that our General Assembly intended for the privilege to apply expansively. Although there may appear to be "tension" within subsection (e) between the scope of the privilege and the regular course of business exception, any limitations on the privilege can be found within the definition of "peer review committee" appearing in subsection (c), obviating the need to resort to the subsection (b)(1) policy statement or any external sources.

## II

The original version of the statute passed by the legislature in 1967 extended immunity to "hospital utilization review committees . . . relating to the hospitalization of Medicare patients." Act of May 25, 1967, ch. 348, § 1, 1967 Tenn. Pub. Acts 1066, 1066. In 1975, the General Assembly repealed and replaced the 1967 version. This amendment included a section defining "medical review committee"[3] and established, for the first time, a privilege for all information furnished to or findings made by the "medical review committee";[4] however, the privilege was made subject to an exception for "records made in the regular course of business."[5] The sections appearing in the 1975 amendment are the

---

[3]

> As used in this section, the term "medical review committee" or "committee" shall mean any committee of a state or local professional association or society, or a committee of any licensed health care institution, or the medical staff thereof, or any committee of a medical care foundation or health maintenance organization, the function of which, or one of the functions of which is to evaluate and improve the quality rendered by providers of health care service or to determine that health care services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health care services in the area. . . .

Act of May 2, 1975, ch. 117, § 1, 1975 Tenn. Pub. Acts 218, 218.

[4] "All information, interviews, reports, statements, memoranda or other data furnished to any committee as defined in this section, and any findings, conclusions or recommendations resulting from the proceedings of such committee are declared to be privileged. . . ." Act of May 2, 1975, ch. 117, § 1, 1975 Tenn. Pub. Acts 218, 219.

[5]

> Nothing contained herein shall apply to records made in the regular course of business by a hospital or other provider of health care and information, documents or records otherwise

(continued...)

progenitors of the current Tennessee Code Annotated sections 63-6-219(c) and (e). It is my view, of course, that the plain language of the 1975 enactment extends the scope of the privilege beyond those proceedings pertaining to "a physician's conduct, competence, or ability to practice medicine," Tenn. Code Ann. § 63-6-219(b)(1). For example, the General Assembly extended the privilege to "evaluat[ions of] and improve[ments to] the quality rendered by providers of health care service" and "determin[ations] that health care services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health care services in the area." Tenn. Code Ann. § 63-6-219(c). While proceedings involving physicians, their conduct, and their capabilities are clearly entitled to the protections offered by the privilege, it is difficult to read the language from subsection (c) as limited strictly to the more narrow application set forth in subsection (b)(1) and relied upon by the majority.

As the majority concedes, subsequent amendments to subsection (c) have served only to broaden the definition of a "medical review committee" (which now may also be designated a "peer review committee"). Moreover, a 1994 amendment to subsection (e) did nothing to restrict the scope of the privilege and served to reenforce the tie between subsections (c) and (e).[6] The steady expansion of the definition of "peer review committee" in subsection (c) has done more than, in the words of the majority, "create[] the impression that the General Assembly likewise intended to expand the scope of the privilege in [subsection] (e)." Instead, because the scope of the privilege in subsection (e) and the definition of "peer review committee" in subsection (c) have been inextricably intertwined since 1975, the broadening of the definition of "peer review committee" has plainly increased the scope of the privilege. When the statutory language is clear and unambiguous, the courts must, of course, simply apply it. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). No reference should be made to the broader statutory scheme, the legislative history, or other sources to discern its meaning. See Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008).

---

[5](...continued)
available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee.

Act of May 2, 1975, ch. 117, § 1, 1975 Tenn. Pub. Acts 218, 219.

[6] "All such information, in any form whatsoever, so furnished to, or generated by, a medical review committee shall be privileged communication subject to the laws pertaining to the attorney-client privilege." Act of Mar. 28, 1994, ch. 732, § 6, 1994 Tenn. Pub. Acts 431, 432.

Despite the sweeping directive of subsection (e) that the peer review privilege applies to "[a]ll information, [etc.] furnished to any committee as defined in this section, and any findings, [etc.] resulting from the proceedings of such committee" and "[a]ll such information, in any form whatsoever, so furnished to, or generated by, a medical peer review committee," the majority holds that the "records made in the regular course of business" exception, found later in the same subsection, creates an ambiguity. The majority reasons that the subsequent phrase "can reasonably be interpreted to mean that any record made in the regular course of a hospital's business is not privileged, even if it was submitted to a committee included in Tenn. Code Ann. § 63-6-219(c)." I do not believe that such an interpretation is permissible; otherwise, the privilege would be swallowed by the exception. In my assessment, subsection (e) contemplates at least two mutually exclusive types of activities by a hospital: first, those that take place in the regular course of business, and second, those that take place under the mantle of one of the committees defined in subsection (c). The latter activity is privileged, while the former is not.

The majority expresses concern that a hospital could avoid all production of documents and records in civil proceedings and thus "shield essentially every decision made by a hospital from appropriately managed discovery in a civil case " by simply placing all of its regular business functions under the umbrella of a committee that meets the definition set forth in subsection (c). Whether or not such a hypothetical abuse of the peer review privilege could occur is not the question before us today. Our duty is to ascertain the meaning of the statute. If the policy proves to be unwise, any remedy is for the General Assembly, and not, under these circumstances, for resolution by the courts.

Because there is no real ambiguity in the statutory provisions, and because, as acknowledged by the majority, "the trial court correctly concluded in its June 5, 2008 order that the TriStar CNO Council, the TriStar CFO Council, and the Hendersonville Medical Center's Quality Management Committee were peer review committees as defined in Tenn[essee] Code Ann[otated section] 63-6-219(c)," the analysis should end there and the judgment of the Williamson County Circuit Court should be affirmed. I feel obliged, however, to address the methods of construction used by the majority in its effort to reconcile the perceived statutory ambiguity.

As stated, the majority places limitations on the protections provided by subsection (e) by creating the term "peer review proceeding," which appears nowhere in the statutory text. Further, the majority has defined the term as a proceeding in which a peer review committee, as defined under subsection (c), is performing a "peer review function" that "involves the evaluation and review of a physician's professional conduct, competence, and ability to practice medicine." The primary justification for so limiting the peer review privilege is the policy statement set forth in the 1992 amendment to the statute. In that 1992

-5-

amendment, the General Assembly identified "the stated policy of Tennessee to encourage committees made up of Tennessee's licensed physicians to . . . evaluate and review their peers' professional conduct, competence, and ability to practice medicine." Tenn. Code Ann. § 63-6-219(b)(1) (emphasis added). The majority's view is that the 1992 legislation, only one of eleven amendments passed since 1967, "provides a significant interpretive clue to the proper application of" the privilege in section 63-6-219(e) and that subsection "(b)(1) states . . . the purpose of the privilege in [section] 63-6-219(e)."

Whether or not the General Assembly "chose the term 'peer review' carefully and deliberately in 1992," it did not, in my view, apply that term to the scope of the privilege in subsection (e). In fact, subsection (b)(1) does not make any reference, explicit or implicit, to the privilege in subsection (e). I see subsection (b)(1) as merely a statement of policy, prefatory in nature, which does not supercede the plain language of subsections (c) and (e), providing that the peer review privilege may, in certain circumstances, apply to information relating to matters involving health care providers other than physicians.[7] See Wade v. Madding, 28 S.W.2d 642, 649 (Tenn. 1930) ("It is a reasonable rule of construction that, when the legislative expression of a general intent conflicts with a particular intent subsequently expressed, the latter will prevail."); see also Williams v. Glickman, 936 F. Supp. 1, 4 (D. D.C. 1996) ("[T]he Court does not have the authority to rewrite a clear, specific statutory provision even if it believed that such a provision was inconsistent with a general statement of purpose."). I am unpersuaded that subsection (b) "states . . . the purpose of the privilege established in" subsection (e), or for that matter that the scope of the privilege in subsection (e) is "reflected in" or should be determined "[i]n accordance with" subsection (b)(1).[8]

The majority has looked to the common definition of the word "peers" and determined that it must refer only to licensed physicians based upon the legislative policy statement in section 63-6-219(b)(1) and the popular name conferred on the statute by the 1992 Amendment, "Tennessee Peer Review Law of 1967," as codified in section 63-6-219(a). Nevertheless, as the majority concedes, section 63-6-219(d)(1) "plainly envisions that persons other than licensed physicians may serve on these committees." As the General

---

[7] The statement from subsection (b)(1), to which the majority affords so much weight, is followed by a second sentence: "Tennessee further recognizes that confidentiality is essential both to effective functioning of these peer review committees and to continued improvement in the care and treatment of patients." Tenn. Code Ann. § 63-6-219(b)(1). A broader construction of the peer review privilege – one that is in line with the plain language of sections 63-6-219(c) and (e) – is fully consistent with this statement of policy.

[8] The majority also discusses the references to physicians in the general immunity provisions of section 63-6-219(d). These appear to me to be terms of example, rather than terms of limitation.

Assembly has not limited participation in a "peer review committee" to licensed physicians, it stands to reason that the statutory privilege extends to "peers" other than physicians.[9]

**III**

If the majority were seeking to limit the scope of the peer review privilege in subsection (e), it seems to me that such limitations must be found, if at all, in the companion section of the peer review statute – the definition of "peer review committee" in subsection (c). "Peer review committee" is defined in terms of three distinct types,

> [(1)] any committee of a state or local professional association or society . . . or
> [(2)] a committee of any licensed health care institution, or the medical staff thereof, or a medical group practice, or
> [(3)] any committee of a medical care foundation or health maintenance organization, preferred provider organization, individual practice association or similar entity[,]

and also in terms of three discrete functions

> [(1)] to evaluate and improve the quality of health care rendered by providers of health care service to provide intervention, support, or rehabilitative referrals or services, or
> [(2)] to determine that health care services rendered were professionally indicated, or were performed in compliance with the applicable standard of care, or that the cost of health care rendered was considered reasonable by the providers of professional health care services in the area . . . [or]
> [(3)] a committee functioning as a utilization review committee . . . or as a utilization and quality control peer review organization . . . or a similar committee or a committee of similar purpose, to evaluate or review the diagnosis or treatment or the performance or rendition of medical or hospital services that are performed under public medical programs of either state or federal design[.]

---

[9] The majority observes that the codification of the peer review law in Chapter 6 of Title 63 of the Tennessee Code Annotated, which pertains to the practice of medicine and surgery, suggests that the peer review privilege should be limited only to physicians. I agree that the placement of a statement in a particular title of the code may, depending on the circumstances, be a significant indicator of the legislature's intent. See Waters v. Farr, 291 S.W.3d 873, 910 (Tenn. 2009). I find nothing, however, about the placement of the peer review statute in Chapter 6 of Title 63 that would preclude the privilege therein from applying to all of the health care functions of peer review committees that are enumerated in the statute.

Tenn. Code Ann. § 63-6-219(c). One could reasonably surmise that by including several enumerated functions of a "peer review committee" within subsection (c), the legislature intended to limit the application of the privilege only to those situations in which the peer review committee is performing one of those functions. Limiting the scope of the privilege to records concerning one of the functions set forth in subsection (c) would place a clear boundary on the scope of the privilege and serve to alleviate the majority's concern that the privilege "knows no reasonable bounds." While such an interpretation would not narrow the scope of the privilege as far as the majority's notion of "peer review proceedings," a reading of that nature would enjoy the advantage of being grounded in the statutory text.

In summary, if the General Assembly had intended in 1992, or at any other time in the last forty-three years, to limit the scope of the privilege in subsection (e) to "the evaluation and review of a physician's conduct, competence, and ability to practice medicine," it could have done so in a simple, straightforward way. It has not chosen that path. To the contrary, our General Assembly has continued to expand both the definition of "peer review committee" in section 63-6-219(c) and the scope of the peer review privilege in section 63-6-219(e). The approach of the majority, while consistent with traditional (and admirable) principles of open discovery in civil cases, is at odds with both the plain, ordinary language in the body of the statute and the progression of the legislative amendments since 1975. For these reasons, I must dissent. I would, therefore, affirm the judgment of the trial court and hold that the peer review privilege in Tennessee Code Annotated section 63-6-219(e) applies to the records and documents sought in the pending litigation.

I am authorized to state that Chief Justice Holder joins in this dissenting opinion.

_____
GARY R. WADE, JUSTICE